

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2007

# USA v. Olfano

Precedential or Non-Precedential: Precedential

Docket No. 06-2988

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Olfano" (2007). *2007 Decisions.* Paper 328.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/328

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2988

———

UNITED STATES OF AMERICA

v.

JOHN OLFANO,
                    Appellant

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 04-cr-00255)
District Judge: Hon. James M. Munley

———

Submitted Under Third Circuit LAR 34.1(a)
September 17, 2007

Before: SLOVITER, SMITH and WEIS, Circuit Judges

(Filed: September 20, 2007 )

———

James V. Wade
        Federal Public Defender
Ronald A. Krauss
        Assistant Federal Public Defender - Appeals
Harrisburg, PA 17101

        Attorneys for Appellant

Thomas A. Marino
      United States Attorney
Francis P. Sempa
      Assistant United States Attorney
Scranton, PA 18501

      Attorneys for Appellee


OPINION


SLOVITER, Circuit Judge.

**I.**

Appellant John Olfano pled guilty to an information charging him with receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). Olfano admitted to collecting child pornography and to receiving and storing between 300 and 400 images on his computer. The FBI found between 300 and 600 images of child pornography on Olfano's seized computer. In the plea agreement and during the plea colloquy Olfano waived his right to have a jury determine any facts related to sentence enhancements, instead agreeing to allow the judge to find such facts by a preponderance of the evidence.

The Presentence Investigation Report ("PSR"), which used the 2002 edition of the United States Sentencing Guidelines, set Olfano's total offense level at 36 and criminal history category at I, for a sentencing range of 188-235 months. The total offense level included many enhancements agreed to by both parties. Olfano objected to the five-level enhancement for "a pattern of activity involving the sexual abuse or exploitation of a minor," pursuant to section 2G2.2(b)(4) of the Guidelines. This Guideline has since been redesignated as section 2G2.2(b)(5).

The enhancement stems from Olfano's two juvenile adjudications for indecent assault; the adjudications involved

2

Olfano's improper sexual contact with a female juvenile in 1986, and with his nine-year-old half-sister in 1989. Olfano does not contest that he was adjudicated delinquent in those cases, but instead argues that they did not constitute a "pattern" under the Guidelines. Olfano's objection was rejected by the District Court and he was sentenced to 188 months, the minimum within his sentencing range.

Olfano appealed his sentence. This court remanded for resentencing after the decision in United States v. Booker, 543 U.S. 220 (2005), because the District Court had not treated the Guidelines as advisory. 161 Fed. Appx. 224, 225-26 (3d Cir. 2006). We made no explicit ruling regarding the five-level "pattern of activity" enhancement.

On remand, after a sentencing hearing, the District Court again sentenced Olfano to 188 months imprisonment, this time noting that the Guidelines are only advisory. The District Court declined to rehear the five-level-enhancement issue, stating that it understood that this court had affirmed "all the enhancements." App. at 99.

Olfano now appeals the most recent sentence issued by the District Court.[1] He raises three issues, which we discuss hereafter.

## II.

### A. Five-level sentence enhancement for "pattern of activity"

First, Olfano again appeals the five-level sentence enhancement based on the District Court's finding a "pattern of activity involving the sexual abuse or exploitation of a minor." PSR at ¶ 32. The commentary to section 2G2.2 defines "pattern of activity involving the sexual abuse or exploitation of a minor"

---

[1] The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same or different victims; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2 cmt. n.1 (2002).[2]  This court has held that, as used in the Guidelines, "sexual abuse" refers to conduct covered by 18 U.S.C. §§ 2241, 2242, 2243, and 2224, while "sexual exploitation of a minor" refers to conduct described in 18 U.S.C. §§ 2251(a), (b), and (c)(1)(b). United States v. Ketcham, 80 F.3d 789, 794 (3d Cir. 1996).  We did state, in that opinion, that any activity covered by section 2G2.2 of the Guidelines – which involves trafficking in child pornography – "does not itself constitute sexual abuse or exploitation of a minor." Id. at 795.

In this case, the District Judge looked to Olfano's two previous indecent assaults and determined that "it is obvious in review of the report that there was a combination of two or more separate instances of sexual abuse or exploitation of a minor by the defendant." App. at 88.  The first incident occurred in 1986, when Olfano was 15 years-old.  It involved Olfano's inserting his finger into a juvenile female's vagina.  At the age of 17, "he touched his nine-and-a-half-year-old [half-sister's] vaginal area on two or three occasions[.]" Id.  Olfano argues that they do not constitute a pattern because the incidents are too different in kind, and too remote in time, from the offense to which he pled guilty.

The Sentencing Guidelines do not place an explicit time limit on the previous activities that a court may consider in finding a "pattern of activity," and there appears to be no case

_____

[2]  The PSR noted, "Because application of the guidelines in effect at the time of sentencing are less favorable to the defendant, the 2002 edition of the Guidelines Manual has been used in this case pursuant to U.S.S.G. § 1B1.11(b)(1)." PSR at ¶ 27.  The commentary for this section has been modified since 2002, but in a manner not relevant to the present appeal.  Accordingly, we cite to the Guidelines and related commentary as in effect in 2002.

4

support for the proposition that previous events can be too remote in time to amount to a pattern. While this court has not addressed the "remote in time" question in a precedential opinion, other courts have addressed this issue. See United States v. Gawthrop, 310 F.3d 405, 414 (6th Cir. 2002) ("Nothing in § 2G2.2(b)(4) or its current commentary requires a temporal nexus between any instances of sexual abuse or exploitation."); United States v. Woodward, 277 F.3d 87, 90-92 (1st Cir. 2002) (holding that incidents of sexual abuse that occurred from 1974-1978 could establish a pattern of activity for purposes of sentencing in 2001); United States v. Lovaas, 241 F.3d 900, 903-04 (7th Cir. 2001) (rejecting defendant's argument that "the decades-old instances of sexual misconduct upon which the district court relied are not relevant conduct[.]"). Additionally, the Court of Appeals for the Ninth Circuit has recently issued an opinion that upheld a district court's reliance on sexual misconduct that occurred at least 35 years ago. United States v. Garner, 490 F.3d 739 (9th Cir. 2007) ("The plain language of the Commentary to § 2G2.2 eliminates the need for any temporal or factual nexus between the offense of conviction and any prior act of sexual abuse or exploitation; the provision obviously intends to cast a wide net to draw in any conceivable history[.]"). We agree that there is no temporal nexus necessary to establish a pattern of activity of sexual abuse or exploitation of a minor. The District Court's reliance on Olfano's 1986 and 1989 conduct was therefore not erroneous.

We also reject Olfano's argument that his prior conduct is too factually dissimilar from his present conviction to create a pattern of activity. The Commentary to the applicable Guidelines explicitly states that the incidents upon which the enhancements were based need not be related to the present offense or involve the same victim. U.S.S.G. § 2G2.2 cmt. n.1 (2002). Although trafficking in child pornography does not constitute sexual abuse or exploitation of a minor, such trafficking is precisely the kind of conduct that is subject to a sentence enhancement based on sexual abuse or exploitation. It appears that the Guidelines contemplate a difference in kind between the conduct that leads to conviction and the conduct that leads to enhancement; trafficking is the offense, but previous

5

sexual abuse or exploitation creates the enhancement. The requisite pattern for enhancement is a "pattern of activity involving the sexual abuse or exploitation of a minor," not, as Olfano seems to argue, a pattern of activity similar to the incident in question.

We have not expressly addressed the difference-in-kind argument, aside from our holding in Ketcham, 80 F.3d at 794-95, that trafficking in child pornography is not sexual exploitation of a minor. Although we have yet to interpret section 2G2.2 in light of the 1996 amendments, several other courts of appeals have recognized that remote or unrelated instances of sexual misconduct can support a sentencing enhancement. See United States v. Ashley, 342 F.3d 850, 852 (8th Cir. 2003) (holding that the district court did not err in using a previous conviction for gross sexual imposition to enhance a sentence for receiving child pornography); Gawthrop, 310 F.3d at 414 (upholding a section 2G2.2(b)(4) enhancement where a defendant convicted of receiving child pornography had previously been convicted of sexually abusing his daughter); Lovaas, 241 F.3d at 904 (affirming sentence enhancement for defendant who pled guilty to transmitting and possessing child pornography and had previously engaged in sexual conduct with two teenage boys); United States v. Anderton, 136 F.3d 747, 750-51 (11th Cir. 1998) (rejecting defendants' argument that prior offenses could not be used for enhancement because, unlike their current conviction, the prior offenses did not involve producing sexually explicit images of a minor). Olfano has presented no cases holding that certain acts are too different from the offense of conviction to properly enhance a section 2G2.2 sentence.

We recognize Olfano's argument that his current conviction is for receipt of child pornography through a computer, while the prior incidents that constitute his pattern of activity "do not involve receipt of child pornography, and do not involve use of a computer." Nonetheless, the prior incidents involve inappropriate touching of juvenile females, which amounts to sexual abuse or exploitation of a minor. We conclude, based on the plain language of the Guidelines, that

6

because there is no similarity requirement and Olfano's previous incidents of sexual misconduct are not so different in kind, they can be used to enhance his sentence for receiving child pornography via the Internet. Accordingly, we see no problem with the District Court's five-level enhancement under section 2G2.2(b)(4) of the Guidelines.

## B. Reasonableness of sentence

Olfano's second argument is that the District Court imposed an unreasonable sentence by again treating the Sentencing Guidelines as mandatory.

This Court reviews "deferentially a district court's application of the § 3553(a) factors to the facts of a case, and must ensure only that 'the district judge imposed the sentence that he or she did for reasons that are logical and consistent with the factors set forth in section 3553(a).'" United States v. Severino, 454 F.3d 206, 210 (3d Cir. 2006) (quoting United States v. Williams, 425 F.3d 478, 481 (7th Cir. 2005)). Ultimately, the court reviews a sentence for unreasonableness. Booker, 543 U.S. at 264.

The Sentencing Reform Act orders district courts to "consider" the factors listed in 18 U.S.C. § 3553(a). United States v. Grier, 475 F.3d 556, 571 (3d Cir. 2007) (en banc). The party appealing the sentence carries the burden of demonstrating unreasonableness. United States v. King, 454 F.3d 187, 194 (3d Cir. 2006).

In its most recent sentencing decision, Rita v. United States, 127 S. Ct. 2456 (2007), the Supreme Court granted wide deference to a district judge in sentencing. Rita, like Olfano, was sentenced to the minimum term of imprisonment within his sentencing range, but challenged the sentence as unreasonable. Id. at 2462. The Supreme Court affirmed the sentence and stated that "we cannot read the statute (or our precedent) as insisting upon a full opinion in every case. The appropriateness of brevity or length, conciseness or detail, when to write, what to say depends upon circumstances." Id. at 2468.

7

Although the Court noted that the trial judge's sentencing explanation was somewhat sparse, it stated that "[t]he record makes clear that the sentencing judge listened to each argument." Id. at 2469. Therefore, when the judge simply called the minimum Guidelines sentence "'appropriate,' [h]e must have believed that there was not much more to say." Id.

We have recognized that those sentences that are within the Guidelines range are more likely to be reasonable than those that fall outside this range. United States v. Cooper, 437 F.3d 324, 331 (3d Cir. 2006). Although we have declined to give all Guidelines sentences a rebuttable presumption of reasonableness, see id., the Supreme Court in Rita decided that such a presumption, while not mandated, is not impermissible. 127 S. Ct. at 2462.

The District Court's explanation for Olfano's sentence was brief, but the record shows that it considered both Olfano's arguments and the section 3553(a) factors. It also, as required, stated its reasons for imposing the sentence. Olfano provided three distinct arguments for a below-Guidelines sentence: his youth, the fact that his prior sexual misconduct was 16 and 18 years prior, and his vulnerability in prison. In delivering the sentence, the District Court stated that it had considered the section 3553(a) factors, "including the necessity of deterrence and just punishment, promotion of respect for the law, protection of the public, and assurance of correctional treatment[.]" App. at 105. While a listing of factors may not, alone, be sufficient to demonstrate the necessary consideration of relevant factors, the record as a whole does indicate such consideration in this case. The Court stated that the sentence reflected "full consideration of all the facts, including the nature and seriousness of the offense, the history and characteristics of Mr. Olfano, [and] the kinds of sentences available[.]" Id. Finally, the Court briefly recited the facts surrounding the guilty plea, which included "a significant history of sexually abusing children[.]" App. at 106. The statement regarding the past sexual abuse does, in part, speak to Olfano's argument that this abuse occurred too long ago to carry any significance.

8

This situation seems very similar to the sentencing described by the Supreme Court in <u>Rita</u>. As in <u>Rita</u>, the District Judge apparently determined that defendant's arguments were simply insufficient to warrant a below-Guidelines sentence.

Because the record is adequate to support the finding that the District Court considered the section 3553(a) factors and because the ultimate sentence was not unreasonable, we will affirm the District Court's 188-month sentence.

## C. District Court's refusal to grant continuance prior to sentencing

Finally, Olfano's third contention is that the District Court abused its discretion in refusing to grant him a continuance so that he could better prepare for the sentencing hearing. Olfano also includes with this argument an ineffective assistance of counsel claim, primarily regarding counsel's failure to endorse his client's continuance request.

We review the trial court's refusal to grant a continuance for an abuse of discretion. <u>United States v. Irizarry</u>, 341 F.3d 273, 305 (3d Cir. 2003) (citing <u>United States v. Kikumura</u>, 947 F.2d 72, 78 (3d Cir. 1991)). Because there is no "mechanical test[]" to determine where there exists a violation of due process, courts must examine the particular circumstances of each case. <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964). When presented with a motion for continuance, a court should consider the following factors: the efficient administration of criminal justice, the accused's rights, and the rights of other defendants whose trials may be delayed as a result of the continuance. <u>United States v. Fischbach & Moore, Inc.</u>, 750 F.2d 1183 (3d Cir. 1984).

Although this Court has not further elaborated on the abuse of discretion standard, others have held that a court will only vacate a sentence based on a refusal to continue a sentencing hearing where the denial was arbitrary and it substantially impaired the defendant's opportunity to receive a fair sentence. <u>United States v. Garcia</u>, 78 F.3d 1457, 1467 (10th

9

Cir. 1996); United States v. Speed, 53 F.3d 643, 644-645 (4th Cir. 1995); United States v. Booth, 996 F.2d 1395, 1397-98 (2d Cir. 1993) (affirming denial of a continuance request despite finding that the arguments in favor of the continuance were not frivolous).

Olfano argues that, in light of the open dispute between him and his counsel regarding the need for a continuance, the District Court should have allowed the continuance, or at least given him and his counsel an opportunity to confer.

At the sentencing hearing, counsel informed the District Court that Olfano "doesn't feel prepared for this sentencing here today, because his mother is not present, and he was hoping to get a letter, perhaps, from the family as well as a past employer." App. at 101. Counsel then told the judge that he thought "that we're prepared, but I know Mr. Olfano has asked me to advise the Court[.]" Id. Counsel then explained to the court that Olfano hoped that the letters would lead to a lower sentence by providing evidence of Olfano's rehabilitative needs and other sentencing factors. However, counsel added his opinion that, because the offense involved family, he didn't know "how persuasive [the letters] would be . . . . I don't know if it is appropriate to submit a type of letter that he's suggesting. So I don't know." App. at 102. After hearing this explanation, the District Judge noted that Olfano had plenty of time – two weeks – to contact his family regarding the hearing, and saw "no reason whatsoever" to delay the hearing, especially "with the Court's calendar and our schedule." Id. Because this decision to refuse the continuance was neither arbitrary nor prejudicial, we will not disturb the District Court's ruling.

Even if the sentencing judge did act arbitrarily, there is nothing in the record to show that any person had actually agreed to submit a letter on Olfano's behalf. Moreover, there is no reason to believe that these letters, if written, would have helped Olfano at sentencing. We see no abuse of discretion in denying the continuance request.

## D. Ineffective assistance of counsel

Olfano embeds an ineffective assistance of counsel argument within his argument regarding the continuance. This Court generally does not review Sixth Amendment ineffective assistance of counsel claims on direct appeal. United States v. McLaughlin, 386 F.3d 547, 555 (3d Cir. 2004). This is not a case "[w]here the record is sufficient to allow determination of ineffective assistance of counsel[.]" United States v. Headley, 923 F.2d 1079, 1083 (3d Cir. 1991). While the record does contain Olfano's statements from the sentencing hearing, there is no way of knowing what led to the disagreement between Olfano and counsel regarding the need for a continuance. Without a record regarding this issue, we cannot determine whether counsel failed to effectively represent his client. Nor is it clear that Olfano was prejudiced by counsel's performance. Even if counsel had asked for a continuance, it is unclear whether the District Judge would have granted it. And even if the continuance were granted, there is no reason to believe that Olfano's sentence would have ultimately been any different. Furthermore, with respect to the five-level sentence enhancement, it is highly unlikely that, even if Mr. Bartolai had more forcefully argued that the District Court should reconsider the issue, the District Judge would have suddenly changed his mind. Nothing had changed since his previous decision, in the original sentencing hearing, to apply this enhancement.

### III.

For the reasons set forth, we will affirm the judgment of sentence without prejudice to Olfano's right to file a collateral proceeding alleging ineffective assistance of counsel should he wish to pursue that claim.

_____