OPINION OF THE COURT
RUFE, District Judge.
John Joseph Burke appeals a sentence imposed by the District Court on the grounds that it is both procedurally and substantively unreasonable. After careful review of the arguments presented, we will affirm the judgment of the District Court.
I.
On September 7, 2007, a DirectTV satellite technician noticed questionable photographs of children while on a service call at Burke’s mobile home. The technician contacted law enforcement, and Pennsylvania State Troopers Brian Wolfe and Thomas Caker responded to the scene. After being informed of the reason for the troopers’ visit, Burke invited them into his home. While inside the mobile home, Trooper Caker observed in plain view a stack of images depicting children engaged in sexually explicit conduct. Burke was immediately arrested and transported to *369 the Pennsylvania State Police Kittanning Barracks.
During his interview at the barracks, Burke stated that collecting naked images of children was his hobby. He also admitted that the pornographic images found in his home were images that he downloaded and printed from the internet. Law enforcement subsequently obtained a seareh warrant for Burke’s mobile home, and the search resulted in the seizure of over 100 VHS tapes, CDs, and two Dell computers. The VHS tapes and computer hard drives contained child pornography, totaling in excess of 600 images. The children in the images were of various ages, some younger than age twelve, and some of the photographs depicted sadistic and violent acts. A second search of Burke’s mobile home resulted in the seizure of audio and visual recording equipment and additional images, CDs, and VHS tapes.
On March 11, 2008, a federal grand jury returned an indictment charging Burke with one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and two counts of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). After an initial plea of not guilty, on December 17, 2008, Burke changed his counseled plea to guilty to all counts of the indictment, a plea which the District Court found to be knowing and voluntary.
Based on the evidence gathered and the admissions by Burke, the probation officer prepared a Presentence Investigation Report (“PSR”), describing the underlying facts of the charged offenses. Relevant to the instant appeal, in calculating the sentencing guideline range, the probation officer recommended a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(5) for engaging in a “pattern of activity involving the sexual abuse or exploitation of a minor.” Support for this enhancement was found in: (1) Burke’s admission that he had sexual contact with a fourteen year-old prostitute, conduct for which he received a diversionary sentence of probation in 1977,[2] and (2) the federal investigation of Burke’s role in producing amateur child pornography. The FBI identified two victims appearing in the recovered images as Burke’s nephew and stepson (hereinafter referred to as VI and V2, respectively). Over Burke’s objection, the victims testified at the sentencing hearing to the sexual abuse they experienced as minors, allegedly perpetrated by Burke over 20 years ago. In consideration of his calculated Criminal History category of 1[3], the enhancement raised the guideline range from 97 to 121 months without the enhancement to 168 to 210 months.
Burke made timely objections to the application of the five-level enhancement in the PSR, stating that VI and V2’s testimony was unreliable and that the alleged conduct involving “two victims and a third fourteen year-old male prostitute over a 30 year period”[4] did not warrant the legal *370 conclusion that a “pattern” of conduct existed as required by § 2G2.2(b)(5). Burke renewed his objections at sentencing, but the District Court overruled them.
V2 testified that he lived with Burke when Burke was married to V2’s mother, from the mid-1980’s to approximately 1993. He was able to identify VI, his cousin, in one of the images on VHS, estimating that the photo was taken when VI was age ten or twelve years. He also identified Vi’s sister (also V2’s cousin) in an image, approximating her age at fourteen years. V2 stated that he remembered that Burke had audio and visual equipment in the basement of their home, including recording equipment and a microphone. V2 then asserted that Burke made sexual advances towards him during the time they had contact. V2 described the abuse as follows, attesting that it occurred when he was about twelve years old:
He — touched me on top of my clothes in the back of his tractor/trailer, touched my penis. At one time in his townhome in Elgin, Illinois, I was laying on the floor and he — I was laying on my stomach, and he had gotten off the couch and laid down on top of me, and I felt his penis between my butt cheeks.[5]
V2 attested to another alleged incident in which Burke grabbed the back of his head, forcing him into a prolonged kiss. The resulting effect of this sexual abuse, according to V2, is an inability to trust anyone and a fractured relationship with his mother.
VI also described several sexual encounters initiated by Burke when he was ten or twelve years old. At the time, Burke was dating Vi’s mother (before he met and married V2’s mother). Burke was working at the time as a truck driver, and he would bring VI along for overnight trips. VI testified that during these trips, in the back sleeper cab of the truck, Burke sexually touched him on multiple occasions “in [his] private area”[6] and rubbed Vi’s penis, as well as put his mouth on it. VI was often intoxicated during these encounters, as Burke would provide him with beer upon request. VI stated that sometimes Burke would touch him on top of his clothes, and other times he would be naked. VI confirmed that he recognized his naked ten or twelve year-old self in one of the videos. He claimed that the sexual abuse adversely impacted his life; he had alcohol problems when he was younger, and he has trouble trusting anyone.
Based on the testimony of VI and V2 and Burke’s admissions in the PSR regarding the 1977 criminal charges[7], the District Court found that the § 2G2.2(b)(5) enhancement applied. The District Court also ruled on all other objections raised by Burke. Burke’s counsel urged the District Court not to impose a lengthy sentence, focusing on Burke’s advanced age (65) and the lack of evidence regarding recent predatory behavior towards minors. After considering testimony and arguments of counsel and reciting its consideration of the 18 U.S.C. § 3553(a) sentencing factors, the District Court imposed a custodial sentence of 168 months, a sentence at the bottom of the advisory guideline range.[8]
*371 In his appeal, Burke challenges the sentence, contending that (1) the mandatory five-level enhancement in U.S.S.G. § 2G2.2(b)(5)[9] is an excessive exercise of the Sentencing Commission’s authority, (2) the sentence imposed was unreasonable in light of the slim likelihood of Appellant’s post-release predatory conduct, and (3) reliance upon a media report by the District Court violated his right to due process of law. We have jurisdiction over this appeal pursuant to 18 U.S.C. § 1291.
II.
A.
When reviewing a sentence on appeal, we must first determine whether the sentencing court committed any serious procedural error, “such as failing to calculate (or improperly calculating) the Guidelines range [or] treating the Guidelines as mandatory....” United States v. Lopez-Reyes, 589 F.3d 667, 670 (3d Cir.2009) (citing Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). We then “review the substantive reasonableness of the sentence under an abuse-of-discretion standard,” while keeping in mind that “[a]s long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the 3553(a) factors, we must affirm.” Id. (referencing United States v. Wise, 515 F.3d 207, 218 (3d Cir.2008)). The burden of showing unreasonableness is on the party appealing the sentence. United States v. Olfano, 503 F.3d 240, 244 (3d Cir.2007).
Sentences that fall within the Guidelines range are more likely to be reasonable than those outside the range. United States v. Cooper, 437 F.3d 324, 331 (3d Cir.2006). In fact, the Supreme Court has held that “a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines.” Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456, 2462, 168 L.Ed.2d 203 (2007). See also United States v. Garcia, 2010 U.S.App. LEXIS 1784, at *7-8 (3d Cir.Pa. Jan. 26, 2010).
A sentencing judge must examine the applicable 3553(a) factors whether or not the sentence imposed departs from the calculated guideline range. United States v. Gunter, 462 F.3d 237, 247 (3d Cir.2006). The district court may not treat the guidelines as mandatory, Id. at 248, but must make an “individualized assessment based on the facts presented.” Gall, 552 U.S. at 50, 128 S.Ct. 586. After a complete review of the record, a district court must then make a final calculation of an appropriate and reasonable sentence. United States v. Tomko, 562 F.3d 558, 568 (3d Cir.2009).
In this case, Burke does not accuse the District Court of ignoring or failing to address either the 3553(a) factors or his objections, as the record reflects a methodical treatment of each, nor does he argue that the District Court treated the guideline range as mandatory. Burke nonetheless attacks the eventual sentence imposed as procedurally and substantively unreasonable.
*372 B.
First, Burke challenges § 2G2.2(b)(5) as an excessive exercise of the Sentencing Commission’s authority. Section 2G2.2(b)(5) imposes a mandatory five-level upward adjustment of the offense level upon a finding that “the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.” U.S.S.G. § 2G2.2(b)(5) (2009). “Pattern of activity” is defined in the Guidelines as “any combination of two or more separate instances of sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.” U.S.S.G. § 2G2.2 cmt. n. 1 (2009). “Sexual abuse or exploitation” is defined as:
(A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). “Sexual abuse or exploitation” does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor. Id.
The District Court found three acts by Burke that qualified as instances of sexual abuse or exploitation: the state criminal charges brought in 1977[10] involving Burke’s encounter with a juvenile prósti-tute, and the two accounts related by VI and V2 at sentencing, alleging that Burke had abused them as minors more than twenty years ago. On appeal, Burke no longer denies that these instances occurred, but asserts that the five-level enhancement that resulted from the fulfillment of the provision amounts to an excessive exercise of authority by the Sentencing Commission. Our review of a district court’s legal interpretation of a sentencing statute and the Sentencing Guidelines is plenary. United States v. Miller, 527 F.3d 54, 60 (3d Cir.2008).
Burke specifically alleges that: (1) the provision is mandatory, not permissive; (2) it carries no temporal limitations; (3) it carries no corroboration requirements and uncharged and formerly unreported prior instances are considered; and (4) its impact on the length of the sentence is substantial. While making these arguments, Burke recognizes that we squarely addressed many of the same contentions in United States v. Olfano, but he urges us to reach a different result.[11] In Olfano, we held that incidents remote in time and variable in kind were properly used to enhance a sentence by five levels under § 2G2.2(b)(5). 503 F.3d at 242-44. Although the defendant in Olfano challenged the application of the guideline and not the provision itself, it is clear that we have previously held that the enhancement does not fail for lack of temporal limitation.
We also reject Burke’s arguments regarding the mandatory nature of the guideline provision and the substantial impact of the enhancement on his sentence. Post United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the *373 assertion that a provision is invalid because it is mandatory carries little weight, as a district court has discretion to impose a sentence which varies from the guideline range on any reasonable ground. Id. at 260-63, 125 S.Ct. 738. Burke acknowledges that while the District Court was required to calculate the final guideline range, the guidelines are ultimately advisory. The District Court’s discretion to impose a sentence lower than the final advisory guideline range, even after it has been adjusted upward under § 2G2(b)(5), undermines Burke’s argument that the guideline provision is invalid as an excessive exercise of authority, but he acknowledges this discretion to advance his argument that the District Court improperly failed to deviate downward from the guidelines range in imposing his sentence. See infra, Part II.C.
Burke’s only remaining argument regarding the validity of § 2G2(b)(5) attacks the lack of its requirement that allegations of sexual abuse or exploitation be corroborated or substantiated by a conviction. The guidelines are clear that convictions are not required, expressly stating that past conduct is considered “whether or not abuse resulted in conviction for such conduct.” U.S.S.G. § 2G2.2 cmt. n. 1 (2009). In finding by a preponderance of the evidence that the past instances of sexual abuse and exploitation occurred, the District Court in this matter credited the relevant undisputed portions of the PSR and the testimony of Yl and V2; that is clearly sufficient for “corroboration”. See U.S.S.G. § 6A1.3 cmt. (2004); United States v. Fisher, 502 F.3d 293, 304-06 (3d Cir.2007); United States v. Grier, 475 F.3d 556 (3d Cir.2007) (stating that the proper evidentiary standard for facts related to enhancements is preponderance of the evidence). Accordingly, based on precedent and the plain language of the guidelines, we find no reason to reverse the application of the five-level enhancement under § 2G2(b)(5).
C.
Burke also argues that the District Court imposed an unreasonable sentence based on his advanced age (65), his “hermit-like” lifestyle, the absence of evidence of recent improper relations with minors, and his current lack of contact with related minors. Burke asserts that, given these factors, the District Court was unreasonably apprehensive about the possibility of post-release recidivism, based in part on the District Court’s improper reliance on a recent media account of a released sex-offender gaining access to a public school. See infra, Part II.D. Essentially, this claim combines all of Burke’s arguments: the sentence was procedurally and substantively unreasonable due to the manner in which the District Court reached its sentencing decision and the weight it afforded various 3553(a) factors.
As noted, the District Court methodically addressed each of Burke’s objections to the PSR, entertained testimony, and listened to counsel’s arguments, specifically those arguments referencing Burke’s age, lifestyle, and history.[12] The District Court offered a brief summary of the factors it considered in imposing its sentence, including “the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to serve as an adequate deterrence, and to protect the public.... ” App. for Appellant 129-30. It recognized its adherence to the 3553(a) factors, focusing on the nature and circumstances of the offense and the history and *374 characteristics of Burke. The District Court clearly stated, after being informed at multiple stages of sentencing of Burke’s age and particular circumstances, that it believed Burke could be a significant threat to children when released from incarceration. Ultimately, the District Court imposed a sentence at the bottom of the guideline range.
The defendants in Rita and Olfano received minimum guidelines sentences, as did Burke, and their judgments were upheld despite relatively brief discussions of the sentencing factors on their records. As the Supreme Court found in Rita, “when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation.” Id. at 2468. “The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances.” Id. We find that the District Court, under the circumstances, adequately explained his reasoning and issued a sentence in light of all the aggravating and mitigating factors on 'the record.
D.
Finally, Burke argues that the District Court denied him due process by referencing during his sentencing a recent media account of a released sex-offender who gained entry to a school. As defense counsel did not contemporaneously object to the District Court’s remarks regarding the media report during Burke’s sentencing hearing, review of this issue is for “plain error affecting substantial rights.” United States v. Adams, 252 F.3d 276, 278 (3d Cir.2001).
In response to defense counsel’s argument that Burke was a recluse and lived in a remote area, and therefore posed no threat to the community upon release, the District Court stated:
The mere fact that the Defendant has lived as a recluse — he’s not in the North Pole. He is in an area where he could easily have access to a mall, where there are children, a grocery store, numerous other places. As we saw just last week, it’s not that hard even to gain entrance to a public school. App. for Appellant 129-30 (emphasis added).
It is this reference to gaining entrance to a public school that Burke assails as a due process violation, because he alleges that the District Court used extrinsic information to aggravate his sentence without providing him with an opportunity to review the evidence and respond. We find Burke’s right to due process was not violated. Due process requires a sentencing court to put a charged defendant on notice of the evidence that it considers, United States v. Ausburn, 502 F.3d 313, 322 (3d Cir.2007), but in the instant case, the District Court’s reference to being able to gain entry to a public school was merely an example of what a person with a history of sexually abusing children could do.
The District Court did not make a factual finding of Burke’s potential proclivity, but properly examined and discussed the sentencing factors enumerated under 18 U.S.C. § 3553(a), in response to Burke’s assertion that, as a recluse, he would not come into contact with minors. As referenced infra Part H.A., a district court must consider, pursuant to the Sentencing Reform Act, factors such as “protecting] the public from further crimes of the defendant”. 18 U.S.C. § 3553(a)(2)(C). Burke’s propensity to commit further crimes against minors is a valid consideration which was addressed by the District Court when it determined the length of his sentence, particularly given the evidence of Burke’s history of sexual abuse and exploitation. Defense counsel was free to argue, as he did, that Burke would not likely endanger the welfare of children in the future; the District Court, however, ultimately determined otherwise based on the evidence presented.
*375 We find, based on the record, that the District Court properly and sufficiently considered the 3553(a) factors and imposed a reasonable sentence, a sentence which fell at the bottom of the guideline range.
III.
For the foregoing reasons, we affirm the judgment of sentence rendered by the District Court as procedurally and substantively reasonable.

.Due to the date of the offense, there are limited records available regarding these charges. Available records document that, on June 7, 1977, Burke was found guilty of one count each of Indecent Assault on a Child under 14, Rape on a Child Under 16, and Contributing to the Delinquency of a Child, in Springfield District Court in the Commonwealth of Massachusetts. PSR ¶ 43. The records are also consistent with Burke's statements that he received one year of probation, after which the charges were dismissed. Id. Despite Burke’s argument offered here on appeal, infra Part II.B, there is no requirement that conduct contributing to a finding of a “pattern of activity” under § 2G2.2(b)(5) result in a conviction.

. Burke received one Criminal History point for a Driving While Intoxicated conviction, placing him in Criminal History category I. PSR ¶¶ 41, 42.

. App. for Appellant 53.

. Id. 73-74.

. Id. 90.

. During a psychiatric interview conducted in 2008, Burke admitted that he had sexual contact with a fourteen year-old male prostitute in 1977, and that he was prosecuted for this conduct and served a year of probation. Id. ¶¶ 43, 44.

.In addition to Burke's custodial sentence, the District Court imposed a life term of supervised release, a $300 special assessment, and other terms not at issue in this appeal. App. for Appellant 130-33.

. Throughout his appeal brief, Burke cites § 2G2.2(b)(4) while discussing the substance of what is currently codified as § 2G2.2(b)(5). In doing so, he appears to be using an earlier version of the Sentencing Guidelines. Effective November 1, 2004, § 2G2.2(b)(4) was re-designated as § 2G2.2(b)(5). U.S. Sentencing Guidelines Manual app. C, amend. 664 (November 1, 2004). Section § 2G2.2(b)(4), also applied to Burke’s sentence, allows for a four-level adjustment if the pornographic material at issue depicts sadistic or violent conduct. Burke’s objection to this enhancement at sentencing was overruled by the District Court. App. for Appellant 120. He does not appeal that decision.

. See supra, note 2; PSR ¶ 48.

. Burke, perhaps perceiving the weakness of his arguments in light of Olfano, seeks to preserve his challenge "in the event that [§ 2G2.2(b)(5)] is amended or repealed by the Sentencing Commission, done away with by Act of Congress or struck down by the courts.” Appellant Brief 19-20.

. In addition, information regarding Burke’s age, lifestyle, and history are documented in the PSR.